998 A.2d 383

Mary ROE

v.

James DOE.

No. 2971, Sept. Term, 2008.

Court of Special Appeals of Maryland.

July 7, 2010.

Anton Iamele (Iamele & Iamele LLP, on the brief) Baltimore, MD, for appellant.

Timothy F. Maloney (Katherine S. Krametbuaer, Levi S. Zaslow, David M. Simpson, Joseph Greenwald & Laake PA, on the brief) Greenbelt, MD, for appellee.

Panel: EYLER, JAMES R., WOODWARD, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

LAWRENCE F. RODOWSKY, J., Retired, Specially Assigned.

Maryland Code (1974, 2006 Repl.Vol.), § 5–117 of the Courts and Judicial Proceedings Article (CJ) provides:

> "**§ 5–117. Actions arising from alleged sexual abuse.**

> "(a) *'Sexual abuse' defined.*—In this section, 'sexual abuse' has the meaning stated in § 5–701 of the Family Law Article.

> "(b) *Limitations period.*—An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed within 7 years of the date that the victim attains the age of majority."

Section 5–117 (the Act) was enacted by Chapter 360 of the Acts of 2003, effective October 1, 2003. Uncodified SECTION 2 of Chapter 360 provides that "this Act may not be construed to apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2003."

In the case before us, the appellant, Mary Roe [1] (Plaintiff), contends that her action for damages for sexual abuse was timely filed under the Act. The appellee, James Doe (Defen-

---

1. Per order of this Court, the parties are to be referred to by specified fictitious names.

dant), contends that the Act does not apply and that the claim is time barred under the three-year statute of limitations provided by CJ § 5–201.[2]

Plaintiff was born on September 29, 1983, and reached her majority on September 29, 2001. See Article 1, § 24, Maryland Code (1957, 2005 Repl.Vol.). She filed this suit on September 3, 2008, in the Circuit Court for Calvert County. She alleged facts sufficient to constitute sexual abuse, that that abuse had occurred while she was a minor, and that Defendant was the abuser. The complaint presented five counts, respectively labeled "Assault," "Battery," "False Imprisonment," "Intentional Infliction of Emotional Distress," and "Negligence." We are concerned here with limitations only as to Counts II through V, because Plaintiff acknowledges that the one-year statute of limitations for "assault" under CJ § 5–105 had run before the Act became effective.

Defendant moved to dismiss, contending that the three-year statute of limitations had run on September 30, 2004, and that § 5–117 could not apply because such an application would be retroactive, in violation of the legislative intent expressed in uncodified SECTION 2 of Chapter 360. Further, Defendant submitted, if the General Assembly intended a retroactive application, it would unconstitutionally deprive Defendant of the vested right that he had acquired when the three-year statute of limitations ran on September 30, 2004.

The circuit court granted the motion to dismiss. The judge reasoned that § 5–117 was purely prospective, so that it "does not apply to *any* actions that accrued before October 1, 2003." Alternatively, the circuit court held that, were § 5–117 to be applied retrospectively, "Defendant's due process rights

---

**2.** CJ § 5–201(a) provides:

"(a) *Extension of time.*—When a cause of action subject to a limitation under Subtitle 1 of this title or Title 3, Subtitle 9 of this article accrues in favor of a minor or mental incompetent, that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed."

would be infringed, because he has a vested right to be free from a suit where the statute of limitations has run." The judge quoted *Dua v. Comcast Cable,* 370 Md. 604, 633, 805 A.2d 1061, 1078 (2002), where the Court said: "This Court has consistently held that the Maryland Constitution ordinarily precludes the Legislature . . . (2) from retroactively creating a cause of action, or reviving a barred cause of action, thereby violating the vested right of the defendant." [3]

Plaintiff timely appealed. She presents two questions which we quote in the margin.[4] We shall reframe Plaintiff's questions presented to conform to the issues discerned by the circuit court, to wit:

1. Did the General Assembly intend § 5–117 to apply to the state of facts presented in the instant matter?

2. If so, is that application constitutional?

## Discussion

To assist the reader, we set forth the relevant dates in chronological order.

September 29, 2001 Plaintiff reaches majority.

October 1, 2003 Seven-year statute of limitations enacted, measured from majority.

September 30, 2004 Three-year statute of limitations, if applicable, runs on Counts II through V.

---

**3.** The circuit court furnished a second and independent reason for dismissing Count V, "Negligence," of Plaintiff's complaint. That count alleged a duty which the circuit court held was not recognized by Maryland law. In this Court, Plaintiff has not questioned the lower court's ruling on that issue. Consequently, the issue has been waived, and we shall affirm on Count V.

**4.** "1. Does the General Assembly of Maryland have the power to enact a statute enlarging the period of limitations applicable to causes of action concerning child sexual abuse stemming from events that predated the enlargement but not otherwise barred by the original period of limitations in effect when the cause of action arose? "2. If such power exists, did Appellant [Roe]'s reliance on CJ § 5–117's seven-year limitations period constitute a retroactive application of the statute merely because it was applied to conduct antedating the provision's enactment?"

September 3, 2008 Suit filed.

September 30, 2008 Limitations under § 5–117, if applicable, would run.

## I

 If one were to consider only the codified portion of Chapter 360, and the effective date of October 1, 2003, there are, theoretically, at least three possible constructions as to the Act's application to causes of action that accrued prior to October 1, 2003. First, there is the null alternative, *i.e.*, that the Act has no application. This is the purely prospective construction for which Defendant contends. Second, there is the fully retroactive construction under which a cause of action that was barred as of October 1, 2003, by the three-year (or one-year) limitations period, is revived, if it is filed within seven years after the minor victim reaches majority. Plaintiff does not contend that the Act revives claims that were time barred as of October 1, 2003. Third, there is a partial retroactive construction under which the time for suit on a cause of action, that accrued prior to October 1, 2003, and that, as of that date, has not been barred by the three (or one) year period of limitations after reaching majority, is extended to seven years after the victim's reaching majority. This is the construction for which Plaintiff contends, but she bases it, not on the codified portion of Chapter 360, but on the uncodified statement of legislative intent in SECTION 2 of Chapter 360.

"As a general rule, statutes are presumed to operate prospectively and are to be constructed accordingly. The presumption against retrospectivity is rebutted only where there are clear expressions in the statute to the contrary. Moreover, even where permissible, retrospective application is not found except upon the plainest mandate in the legislation. The rationale underlying the general rule provides that retrospective application, which attempts to determine the legal significance of acts that occurred prior to the statute's effective date, increases the potential for interference with persons' substantive rights."

*Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co.,* 308 Md. 556, 560–61, 520 A.2d 1319, 1321–22 (1987) (citations omitted). That case dealt with Chapter 546 of the Acts of 1983 that created an immunity from tort. The effective date clause stated simply that it was effective July 1, 1983. The Court held that the defense did not apply to a tort committed prior to the statute's effective date.

In determining whether Chapter 360 was intended by the General Assembly to have any retroactive effect, we turn to the well established rules governing statutory interpretation.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

"To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with 'forced or subtle interpretations' that limit or extend its application."

*Lockshin v. Semsker,* 412 Md. 257, 274–75, 987 A.2d 18, 28–29 (2010).

Chapter 360, introduced as Senate Bill 68, contained three sections. SECTION 1 enacted CJ § 5–117. SECTION 2, an amendment added in the course of passage, provides:

"AND BE IT FURTHER ENACTED, That this Act may not be construed to apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2003."

SECTION 3 provides: "AND BE IT FURTHER ENACTED, That this Act shall take effect October 1, 2003."

SECTION 2 manifests the legislative intent that Chapter 360 have some retroactive application. If Chapter 360 were intended to apply purely prospectively, then it would have sufficed to enact only SECTION 3. In that way, the ordinary rule would apply under which legislation is presumed to operate only prospectively. But, here, it cannot be concluded that Chapter 360 operates only prospectively because, to do so, would render SECTION 2 surplusage, in its entirety. That reading violates a cardinal rule of statutory construction.

SECTION 2, by its plain language, prohibits a construction of CJ § 5–117 that would effect a fully retroactive application that revived causes of action that were barred, prior to the enactment of Chapter 360, under the previously applicable law of limitations. Once again, if the Legislature intended, in addition, that CJ § 5–117 also bar causes of action on which limitations had not run, as of October 1, 2003, under the prior limitations law, then the Legislature did not say so. Further, if that were the legislative intent, it could have been accomplished simply by enacting SECTION 3 and omitting SECTION 2.

Defendant's position seems to be that the prior limitations law continues to govern claims that arose prior to October 1, 2003, and that CJ § 5–117 governs only claims that arose on or after October 1, 2003. But, that is not what SECTION 2 says. Defendant's reading would have SECTION 2 state, "That this Act may not be construed to apply retroactively to revive any action that was barred *or becomes barred* by the application of the period of limitations applicable before October 1, 2003." Adding words to a statute to affect the meaning manifested by the statute's plain language is unsound statutory construction.

Accordingly, it would seem that Plaintiff's construction is correct. SECTION 2 effects an extension of time, from three years to seven years after majority, for the filing of claims for

sexual abuse against a minor that were not barred prior to October 1, 2003, by the then applicable limitations.

*Legislative History of Chapter 360*

Defendant, citing *Robey v. State,* 397 Md. 449, 454, 918 A.2d 499, 502 (2007), points out that it is appropriate to examine extrinsic sources of legislative intent as a check on one's reading of the plain language of the statute. The legislative history of Chapter 360 includes an opinion of an Assistant Attorney General in the office of Counsel to the General Assembly. In our view, Chapter 360's history, and the opinion of the Assistant Attorney General, support Plaintiff's position.

When introduced as Senate Bill 68, Chapter 360 included two features that did not survive to final passage. The Bill would have made the statute of limitations twelve years following the later of the victim's twenty-first birthday or the victim's discovery that the alleged abuse was actionable. It also provided that what became CJ § 5–117 "shall apply to any action commenced on or after October 1, 2003, including any action that would have been barred by the application of the period of limitation applicable before October 1, 2003." In other words, Senate Bill 68, as introduced, was of the type of retroactivity we have above described as "fully" retroactive.

The Chair of the Judicial Proceedings Committee requested an opinion on three questions. First, "whether the application of the bill to apply retroactively to cases that were barred prior to the effective date of the law would violate due process." Second, "whether the bill could constitutionally be amended to allow a one year window in which plaintiffs could bring suits that have already been barred by the statute of limitations." Third, "what the effect would be if the bill is passed without any provision as to whether it is to be given retroactive or prospective effect."

On the first question, the Assistant Attorney General concluded that "it is clear that Senate Bill 68 could retroactively revive barred causes of action without violation of the United States Constitution." As to state law, counsel advised that

there was no direct Maryland authority and that there was a difference of opinion in our sister states, with some states finding "a vested right in a statute of limitations defense *once the limitations period has run.*" (Emphasis added). The advice on the first and second questions concluded that

"no reported case in Maryland . . . would mandate the unconstitutionality of retroactive application of Senate Bill 68. However, it is possible, given the actions of other states, and its own statement in *Dua,* that the Court could conclude that retroactive application to revive barred causes of action violates Due Process."

(Footnote omitted). The opinion quoted that portion of *Dua* where the Court said that it had consistently held that the Maryland Constitution ordinarily precludes the Legislature "from retroactively . . . reviving a barred cause of action[.]" 370 Md. at 633, 805 A.2d at 1078.

Unremarkably, with respect to the third inquiry, counsel's advice was that, if the bill were silent on its application to existing causes of action, the bill's discovery provision would most likely apply only to causes of action arising after the effective date of the bill.

Defendant relies on the concluding sentence of the opinion:

"It is also my view that in the absence of a specific provision, the statute could be interpreted to have prospective effect, and that most likely would mean that it would apply only to causes of action based on abuse occurring after the effective date."

The key words in this sentence are "in the absence of a specific provision," a hypothetical that the Assistant Attorney General was asked to assume in the third question presented. Here, of course, Senate Bill 68, as enacted, is not silent on its applicability to existing causes of action. It contains SEC-TION 2, expressly providing for partial retroactivity. Thus, the response of the Committee, and of the Legislature, in enacting Chapter 360 was to strike from the bill the fully retroactive provision and to make the bill apply to actions that

had not been barred, prior to its effective date, by the limitations provisions previously applicable.

## Failed Subsequent Amendments

Defendant has collected the bills from legislative sessions after 2003 that were designed to amend CJ § 5–117, but failed of enactment. These bills, and the legislative session in which they were introduced, are H.B. 1376 (2005), H.B. 1147 (2006), H.B. 1148 (2006), S.B. 575 (2007), H.B. 858 (2008), S.B. 238 (2009), and H.B. 556 (2009). The relevant portions thereof are set forth in the Appendix to this opinion. Although these are not failed amendments that were offered to Senate Bill 68 in the 2003 session, we shall review them to see if they alter our construction of the plain language of Chapter 360, as enacted.

Six of the bills, i.e., all except H.B. 1148 (2006), seem intended to achieve full retroactivity, that is, to revive claims barred by limitations prior to the proposed effective date of the legislation, and they couple that revival with a window of time within which the revived action must be brought. H.B. 1376 (2005) and H.B. 1147 (2006) expressly stated that they "shall be construed to apply retroactively to revive any action" barred before their effective dates. Further, H.B. 1376 (2005) would have enlarged limitations to twenty-eight years after majority.

S.B. 575 (2007) and H.B. 858 (2008) would have permitted suit, filed within a window of time, by any plaintiff, regardless of age, whose attorney certified to the merits of the claim. H.B. 858, in addition, would have enlarged limitations to thirty-two years after majority.

S.B. 238 (2009) and H.B. 556 (2009) were companion bills that would have revived causes of action that were barred prior to their effective dates under the seven years from majority statute of limitations. Both bills would have enlarged limitations to thirty-two years. These two bills seem to have been intended to protect claimants who missed the boat under the 2003 legislation.

H.B. 1148 (2006) attracted the largest number of sponsors. It would have enlarged the period of limitations to twenty-four years from majority. SECTION 2 of the bill provided:

"That this Act may not be construed to apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2006."

If enacted, H.B. 1148 (2006) would have presented the same statutory interpretation question that we have answered above, except that, whether an action was barred would be measured by the seven-year statute and not the three-year statute that antedated the 2003 legislation.

These failed amendments, by their attempts to revive actions barred before their effective dates and to enlarge the period of limitations, reflect that some legislators disagreed with the policy of the 2003 legislation that did not revive actions barred prior to its effective date but simply enlarged the period of limitations for claims that were viable on its effective date.

We conclude that, in enacting CJ § 5–117, the General Assembly intended that it be applied partially retroactively.

## II

Defendant further argues that, even if the General Assembly intended that Chapter 360 apply to causes of action that had arisen prior to its effective date, but on which limitations had not yet run, Plaintiff's claim is nevertheless subject to dismissal because that partial retrospective application deprives Defendant of a substantial right. In support of this position, Defendant refers us to cases in which the Legislature extended a period of time that was a condition precedent to the cause of action. Defendant's argument fails to recognize the well established distinction between a time limit that is a condition precedent to the cause of action and an ordinary statute of limitations, such as CJ § 5–117. We explain.

Defendant emphasizes *Blocher v. Harlow*, 268 Md. 571, 303 A.2d 395 (1973), *overruled on other grounds by Eastgate*

*Assocs. v. Apper,* 276 Md. 698, 350 A.2d 661 (1976). *Blocher* involved an amendment to the statute fixing the time within which a claim against a decedent's estate was to be filed. The amendment, effective June 1, 1966, enlarged the deadline from six months after the personal representative qualified to three years from accrual of the cause of action, if it arose out of a motor tort and the decedent carried automobile insurance. In *Blocher,* the accident occurred April 15, 1966, and the personal representative qualified September 9, 1966, but suit against the decedent's interest was not filed until February 14, 1969.[5] Thus, the claim would be timely if the new statute applied fully retroactively, but it would be barred if the new statute was partially retroactive or fully prospective.

The Court, dismissing the appeal in *Blocher* for want of a final judgment, expressed considered *dicta.* It said that the circuit court correctly dismissed the action on the authority of *Dixon v. Checchia,* 249 Md. 20, 238 A.2d 247 (1968), a case involving the same statute as *Blocher* and presenting the same fact pattern. Both *Blocher* and *Dixon* rest on Chief Judge Hammond's opinion for the Court in *Chandlee v. Shockley,* 219 Md. 493, 150 A.2d 438 (1959). There, the Court explained that, under the statute, "the representative does not merely take the place of one against whom a claim has been asserted, but is made amenable, in his representative capacity, to service of process as an original party. Such direct liability did not exist at common law but is conferred wholly by the Statute." *Id.* at 497, 150 A.2d at 440.

*Dixon v. Checchia* put the same concept this way:

"[T]he period of limitations in Section 112 is set forth in the statute and is considered a part of the grant of the right itself. The limitation period in Article 93, Section 112 is a part of the substantive right that did not exist at common law but is wholly conferred by the statute."

---

5. The claim based on the decedent's tort was asserted against her father as "father and next friend."

*Dixon,* 249 Md. at 24, 238 A.2d at 249. This passage is quoted in *Blocher,* 268 Md. at 580, 303 A.2d at 399–400.

Indeed, the *Blocher* Court wrote:

"There is a substantial body of law to the effect that where a limitation period is stipulated in a statute creating a cause of action it is not to be considered as an ordinary statute of limitations, but is to be considered as a limitation upon the right as well as the remedy, with the result that as to causes of action already accrued at the time of the enactment of a subsequent statute enlarging the limitation period on such causes of action the subsequent statute will not be held applicable so as to extend or enlarge the original limitation period, particularly where no legislative intent to give the subsequent statute a retroactive application clearly appears from its language."

268 Md. at 581, 303 A.2d at 400.

The distinction between a condition precedent and an ordinary statute of limitations also applies to wrongful death actions. In *Trimper v. Porter–Hayden,* 305 Md. 31, 501 A.2d 446 (1985), the appellant argued that the discovery rule, applicable to ordinary limitations issues, see *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981), was applicable as well to actions for wrongful death. Rejecting that argument, the Court said:

"We cannot, however, apply the foregoing rationale [the discovery rule] to the time bar applicable to wrongful death actions. A long line of precedent in this Court and the unambiguous language of CJ § 3–904(g) prevent adopting a discovery rule for such claims.

" 'The rule in Maryland is that, since the wrongful death statute created a new liability not existing at common law, compliance with the period of limitations for such actions is a condition precedent to the right to maintain the action. The period of limitations is part of the substantive right of action.'

"*Slate v. Zitomer,* 275 Md. 534, 542, 341 A.2d 789, 794 (1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d

87 (1976), citing *Smith v. Westinghouse Electric Corp.*, 266
Md. 52, 55–56, 291 A.2d 452, 454 (1972); *Dunnigan v.
Cobourn*, 171 Md. 23, 25–26, 187 A. 881, 884 (1936); and
*State v. Parks*, 148 Md. 477, 479–82, 129 A. 793, 795 (1925).
*See also Cotham and Maldonado v. Board of County
Com'rs*, 260 Md. 556, 563, 273 A.2d 115, 119 (1971); *London
Guarantee & Accident Co. v. Balgowan Steamship Co.*, 161
Md. 145, 157, 155 A. 334, 338 (1931). Thus, were we, by
applying a discovery rule, to allow wrongful death actions to
be filed more than three years after death, we would be
violating the legislatively imposed time limitation on the
legislatively created right of action."

*Trimper*, 305 Md. at 35–36, 501 A.2d at 448–49.

To the foregoing cases may be added Judge (later Chief
Judge) Bell's opinion for the Court in *Waddell v. Kirkpatrick*,
331 Md. 52, 626 A.2d 353 (1993), holding that the time within
which to bring a wrongful death action was not extended until
an infant plaintiff reached majority. In contrast, "a statute of
limitations affects only the remedy, not the cause of action[.]"
*Id.* at 59, 626 A.2d at 356.

The distinction is also applied to the time limit for asserting
claims under a statute waiving sovereign immunity. *See
Higginbotham v. Public Service Comm'n*, 412 Md. 112, 127–
29, 985 A.2d 1183, 1191–92 (2009), discussing *State v. Sharafel-
din*, 382 Md. 129, 854 A.2d 1208 (2004).

### The Maryland Cases

Insofar as disclosed by the briefs of the parties and by our
own research, there is no Maryland civil case in which a
defendant challenged the full or partial retrospective applica-
tion of a statute enlarging an ordinary statute of limitations.[6]

---

**6.** Defendant refers us to *State v. Stowe*, 376 Md. 436, 829 A.2d 1036
(2003), involving limitations on criminal prosecutions. There, the
defendant was charged with engaging in unnatural perverted sexual
practices in the period 1958 to 1960. At that time the crime was a
"penitentiary" misdemeanor on which there was no statute of limita-
tions. In 1967, the General Assembly enacted legislation providing that
all sentences be to the custody of the Commissioner of Correction. As

As previously noted, full retroactivity is not an issue in this case. Nor are we directly concerned with a shortening of a period of ordinary limitations which would have some impact on the holder of the cause of action. Our concern here is with an extension of an ordinary statute of limitations and whether the unquantifiable increase in the possibility that a suit may be brought during the period of the extension, based on a cause of action viable when the limitations are extended, infringes a substantial right of the persons who are sued.

In *Janda v. General Motors Corp.*, 237 Md. 161, 205 A.2d 228 (1964), the Court reviewed various rules formulated to aid in determining the prospective/retrospective issue. Quoting *Richardson v. Richardson*, 217 Md. 316, 320, 142 A.2d 550, 553 (1958), the first rule stated was: "Ordinarily a change affecting procedure only, and not substantive rights, made by statute (and an amendment of the Maryland Rules has essentially the same effect) applies to all actions [and matters] whether *accrued*, pending or future, unless a contrary intention is expressed." *Janda*, 237 Md. at 168, 205 A.2d at 232 (emphasis added).

There are a number of Maryland cases which, in effect, treat ordinary statutes of limitations as dealing with procedure, but these cases involve a reduction of the time within which one asserting a claim must do so. For example, *Hill v. Fitzgerald*, 304 Md. 689, 501 A.2d 27 (1985), upheld a statute of repose in medical malpractice cases that was attacked on grounds that it deprived the plaintiff of a substantial right. The Court quoted from *Allen v. Dovell*, 193 Md. 359, 363–64, 66 A.2d 795, 797 (1949):

part of that legislation, the drafting technique employed, eliminating all references to the penitentiary as a place of confinement, had the unintended effect of reducing limitations on all misdemeanors to one year. Curative legislation was not passed until 1991, after which Stowe was prosecuted. The Court, in effect, held that limitations had run on the prosecution under the one year statute and that the curative legislation did not revive the prosecution. In the case before us, Plaintiff's claim was viable when Chapter 360 became effective.

" 'It is true that the Legislature cannot cut off all remedy and deprive a party of his right of action by enacting a statute of limitations applicable to an existing cause of action in such a way as to preclude any opportunity to bring suit. However, the Legislature has the power to amend a statute of limitations either by *extending* or reducing the period of limitations, so as to regulate the time within which suits may be brought, provided that the new law allows a reasonable time after its enactment for the assertion of an existing right or the enforcement of an existing obligation.' "

*Hill,* 304 Md. at 702–03, 501 A.2d at 33–34 (emphasis added). *Allen v. Dovell* involved the reduction of the time within which a person whose property had been sold at tax sale could redeem the property from the tax sale purchaser.

A statute reducing plaintiffs' time for filing suit was approved in *Kelch v. Keehn,* 183 Md. 140, 36 A.2d 544 (1944). The plaintiff was the receiver of an assessable mutual insurance company who sought to enforce assessments made in 1940 and 1941 on policies that had terminated in 1935 and 1936. Chapter 296 of the Acts of 1941, effective June 1, 1941, reduced limitations on such actions to one year after policy termination, unless the assessment was made within one year after policy termination. Under the prior law, the statute of limitations on the receiver's claim was three years, and the receiver's suit in 1943 was timely under the pre-June 1941 standard. The Court held that the receiver's claim was barred, saying, in part:

"Where the effect of the statute is not to obliterate existing substantial rights but affects only the procedure and remedies for the enforcement of those rights, it applies to all actions whether *accrued,* pending or future, unless a contrary intention is expressed."

*Id.* at 144, 36 A.2d at 545 (emphasis added). Although the statute did not contain any provisions similar to SECTION 2 in the matter before us, the *Kelch* Court concluded that it was "apparent that the Legislature intended that the rights existing ... on June 1, 1941, must be asserted within one year

thereafter." *Id.* at 147, 36 A.2d at 547. As so construed, the Act afforded the Plaintiff a reasonable time within which to bring suit so that no substantial right was violated by the reduction in limitations. Judgment for the receiver was reversed.

*Ireland v. Shipley,* 165 Md. 90, 166 A. 593 (1933), involved Chapter 342 of the Acts of 1931. Prior thereto, there was no time limit on a claimant's reopening a workers' compensation award. Chapter 342 set a time limit of one year from the award. Ireland, the claimant, formally petitioned in July 1932 to reopen his 1921 award. The Act was held to allow reopening, if sought within one year of the new statute's effective date. The case was remanded to have the administrative agency determine whether Ireland's letter to it in May 1932 procedurally effected a reopening.

The reductions on plaintiffs' pre-existing time to sue, by the retroactive application of the statutes in the Maryland cases reviewed above, did not unconstitutionally impair substantial rights. Those reductions would seem to encroach on the pre-existing rights of those plaintiffs to a similar, if not a greater, degree than the subject extension of limitations for child victims of sexual abuse encroaches on the pre-existing rights of defendants.

From the standpoint of the due process rights of defendants, *Rice v. University of Maryland Md. Sys. Corp.,* 186 Md.App. 551, 975 A.2d 193, *cert. granted,* 411 Md. 355, 983 A.2d 431 (2009), is closely related to the issue before us. That case involved the retroactive application of CJ § 5–119 (2009 Cum.Supp.). It is a saving statute for medical malpractice claims that had been dismissed for failure to present a certificate of merit that complied with the requirements elucidated in *Walzer v. Osborne,* 395 Md. 563, 911 A.2d 427 (2006). The *Rice* claims were filed on November 17, 2003. On January 18, 2007, a circuit court dismissed those claims without prejudice, based upon *Walzer,* and the plaintiffs appealed. While that appeal was pending, the General Assembly enacted § 5–119, effective June 1, 2007. It provided, *inter alia,* the claims

dismissed without prejudice on or after November 17, 2006, and before June 1, 2007, could be commenced anew if filed on or before August 1, 2007. The *Rice* plaintiffs, on July 23, 2007, refiled, with a revised certificate, and permitted their pending appeal to be dismissed.

This Court held that the statute did not violate the defendant's due process rights, even though the time within which the *Rice* plaintiffs initially could assert their claims had long expired. Distinguishing the cases in which the Legislature attempted full retroactivity of a Lord Campbell's action, we reasoned that "[t]he appellants' claims were still in ongoing litigation at the time the 2007 statute took effect, and, as a consequence, their claims had not 'expired,' and no vested property interests of the [defendant] were infringed when the General Assembly enacted a provision that permitted the continued pursuit of such claims." 186 Md.App. at 566, 975 A.2d at 202.

The same point may be illustrated by *Rawlings v. Rawlings*, 362 Md. 535, 766 A.2d 98 (2001). Under *Lynch v. Lynch*, 342 Md. 509, 677 A.2d 584 (1996), one charged with constructive civil contempt for failure to pay child support could defend on the ground that the obligee failed to prove that the alleged contemnor had the ability to pay at the time of the contempt hearing. Maryland Rule 15–207(e), effective January 1, 1997, changed the rule of *Lynch* and permitted a finding of contempt if it could be shown that the alleged contemnor had the ability to pay in the period when arrearages were accumulating, even if there were no ability to pay at the time of the hearing. Michael Rawlings, the contemnor in *Rawlings*, accumulated arrearages prior to January 1, 1997. The Court held that the new rule, being clearly remedial, had a retrospective sweep. 362 Md. at 554, 766 A.2d at 108–09.

Further, the statements in *Hill* and *Allen*, that the Legislature may extend limitations, necessarily contemplate, based on the context, that the extension have some retroactive operation. There is nothing remarkable about the Legislature's enlarging limitations wholly prospectively.

## Out–of–State Cases

Defendant refers us to certain decisions of federal courts and courts of our sister states, but those cases do not address the type of partial retroactivity with which we are here concerned. The cited cases either apply, or at least recognize, the proposition that a change in a statute of limitations cannot be applied to revive a claim that was barred under a former limitations statute prior to the effective date of a new limitations statute. Applying that proposition are *Doe v. Diocese of Dallas*, 234 Ill.2d 393, 334 Ill.Dec. 649, 917 N.E.2d 475 (2009); *Clay v. Kuhl*, 189 Ill.2d 603, 244 Ill.Dec. 918, 727 N.E.2d 217 (2000); *Sepmeyer v. Holman*, 162 Ill.2d 249, 205 Ill.Dec. 125, 642 N.E.2d 1242 (1994); and *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338 (Mo.1993). Recognizing, but not applying, that proposition are *Baughn v. Eli Lilly & Co.*, 356 F.Supp.2d 1166, 1171 (D.Kan.2005); and *Long v. Hershey Chocolate, U.S.A.*, 1992 WL 191097, 1992 U.S. Dist. LEXIS 6583 (M.D.Pa.1992).

More relevant to the issue before us are the partial retroactivity decisions. *See, e.g., Lamke v. Sunstate Equip. Co.*, 387 F.Supp.2d 1044, 1052 (N.D.Cal.2004) (adopting plaintiff's argument that " 'the extension of the statutory period within which an action must be brought [here from one year to two] is generally held to be valid if made *before* the cause of action is barred.' "); *United States ex rel. Thistlethwaite v. Polymer*, 6 F.Supp.2d 263, 265 (S.D.N.Y.1998) ("[T]he law is now clear that a lengthened statute of limitations is 'procedural'—that is, it does not alter substantive rights—and can be applied to pre-existing claims as long as the new statute does not revive claims already barred."); *Reeves v. Arkansas*, 374 Ark. 415, 288 S.W.3d 577, 581 (2008) ("[N]o one has any vested right in a statute of limitations until the bar of the statute has become effective."); *Mojica v. 4311 Wilshire, LLC*, 131 Cal.App.4th 1069, 1072, 31 Cal.Rptr.3d 887 (2005) (applying the rule of *Mudd v. McColgan*, 30 Cal.2d 463, 183 P.2d 10 (1947), that, under settled law of California, an amendment which enlarges a period of limitations applies to matters that are not already barred); and *Watson v. The Forty–Second Street & Grand*

*Street Ferry R.R. Co.*, 93 N.Y. 522 (1883) (applying statute enacted September 1, 1877, that enlarged limitations from one year to three years, to sustain a suit filed in January 1880 based on claim that accrued April 18, 1877).

The Superior Court of New Jersey, Law Division, has addressed whether one may acquire a vested right in an ordinary statute of limitations.

"A vested right has been defined as a present fixed interest which ... should be protected against arbitrary state action. But there is no vested right in the continued existence of a statute or rule of the common law which precludes its change or repeal.

"An expectation, or a mere hope, even when reasonably based upon present law, is not a vested right. Until there is a final disposition of the litigation, ... new statutory provisions can constitutionally be applied.... A right cannot be regarded as vested unless it is something more than a mere expectation ... based upon an anticipated continuance of the present laws. To be fully vested, there must be a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or legal exemption from a demand made by another. Litigation expectations are never final."

*D.J.L. v. Armour Pharmaceutical Co.*, 307 N.J.Super. 61, 84–85, 704 A.2d 104, 115 (1997) (citations and quotation marks omitted).

*Armour Pharmaceutical* sustained the constitutionality of a New Jersey statute, effective May 8, 1996, that declared July 13, 1995, to be the accrual date of claims against proprietary blood plasma processors by persons who allegedly contracted HIV or AIDS from their products. Under the statute, claims that were fully barred were revived. Our quotation from *Armour Pharmaceutical* does not intimate any opinion on that aspect of the case, but the quotation highlights that the instant Defendant's interest in the limitations statute that had not yet run would be even more ephemeral.

We conclude that the General Assembly did not infringe any vested or substantial right of Defendant when it extended the period of limitations on claims of sexual abuse of minors and made that extension applicable to claims that were not barred, as of the effective date of the new legislation, by expiration of the prior limitations period.

Accordingly, we shall affirm the judgment of the circuit court on Count V of the complaint,[7] and reverse on Counts II through IV.

**JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**

APPENDIX

### H.B. 1376 (2005)

"(b) An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed within [7] 28 years of the date that the victim attains the age of majority.

"SECTION 2. AND BE IT FURTHER ENACTED, That, subject to Section 3 of this Act, this Act shall be construed to apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2005.

"SECTION 3. AND BE IT FURTHER ENACTED, That any action that was barred by the application of the period of limitations applicable before October 1, 2005, shall be filed on or before October 1, 2006."

### H.B. 1147 (2006)

"SECTION 2. AND BE IT FURTHER ENACTED, That, subject to Section 3 of this Act, this Act shall be construed to

---

7. See note 3.

apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2006.

"SECTION 3. AND BE IT FURTHER ENACTED, that any action that was barred by the application of the period of limitations applicable before October 1, 2006, shall be filed on or before October 1, 2008."

## H.B. 1148 (2006)

"(b) An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed within [7] 24 years of the date that the victim attains the age of majority.

*"SECTION 2. AND BE IT FURTHER ENACTED, That this Act may not be construed to apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2006."*

## S.B. 575 (2007)

"(b) An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed [within]:

(1) **WITHIN** 7 years of the date that the victim attains the age of majority; **OR**

(2) **BEFORE DECEMBER 31, 2008, IF THE VICTIM, REGARDLESS OF AGE, HAS A CERTIFICATE OF MERIT UNDER SUBSECTION (C) OF THIS SECTION.**

"SECTION 2. AND BE IT FURTHER ENACTED, That any claim for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor that would otherwise be barred as of January 1, 2008, solely because the statute of limitations specified in § 5–117(b) of the Courts and Judicial Proceedings Article in effect before the enactment of this Act has expired, is revived under this Act, and a cause of action may be commenced within 1 year of January 1, 2008."

## H.B. 858 (2008)

"(b) An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed [within];

(1) **WITHIN** [7] **32** years of the date that the victim attains the age of majority; **OR**

(2) **SUBJECT TO SUBSECTION (D) OF THIS SECTION, ON OR BEFORE DECEMBER 31, 2009, IF THE VICTIM, REGARDLESS OF AGE, FILES A CERTIFICATE OF MERIT UNDER SUBSECTION (C) OF THIS SECTION.**

"SECTION 3. AND BE IT FURTHER ENACTED, That any claim for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor that would otherwise be barred as of January 1, 2009, solely because the statute of limitations specified in § 5–117(b) of the Courts and Judicial Proceedings Article in effect before the enactment of this Act has expired, is revived under this Act, and a cause of action may be commenced within the year beginning January 1, 2009 through the end of December 31, 2009."

## S.B. 238 (2009)

"SECTION 2. AND BE IT FURTHER ENACTED, That any claim for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor that would otherwise be barred as of January 1, 2010, solely because the statute of limitations specified in § 5–117(b) of the Courts and Judicial Proceedings Article in effect before the enactment of this Act has expired, is revived under this Act, and a cause of action may be commenced within 2 years of January 1, 2010."

## H.B. 556 (2009)

Same as S.B. 238 (2009).